Approved: _____
JACOB R. FIDDELMAN
Assistant United States Attorney

Before: HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - - - x
 :
UNITED STATES OF AMERICA : SEALED COMPLAINT
 :
 - v. - : Violation of 21 U.S.C.
 : § 846
EDUARDO RIVERA, :
 a/k/a "Monster," : COUNTY OF OFFENSE:
 : BRONX
 Defendant. :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss:

PABLO E. HUERTA, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

1. From at least in or about October 2019, up to and including in or about December 2019, in the Southern District of New York and elsewhere, EDUARDO RIVERA, a/k/a "Monster," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that EDUARDO RIVERA, a/k/a "Monster," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that EDUARDO RIVERA, a/k/a "Monster," the defendant, conspired to distribute and possess with intent to distribute were: (i) 400 grams and more of mixtures and

substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Special Agent with HSI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, including my review of law enforcement reports, other documents, and video recordings, and my conversations with other law enforcement officers, I have learned the following, in substance and in part:

a. Since in or about September 2019, HSI and the New York City Police Department have been investigating narcotics trafficking that has been occurring in the vicinity of Davidson Avenue and West 190th Street in the Bronx, New York ("Location-1"). As part of this investigation, law enforcement officers have observed numerous hand-to-hand sales of narcotics at or near Location-1, many of which have been video-recorded by law enforcement. For example:

i. On or about October 29, 2019, an undercover law enforcement officer ("UC-1") purchased approximately 10 grams of heroin from EDUARDO RIVERA, a/k/a "Monster," the defendant. The transaction was video-recorded by law enforcement. UC-1 met RIVERA at Location-1, and RIVERA stated, in substance and in part, that he was waiting for his man. UC-1 and RIVERA then walked down the block to the vicinity of 2390 Davidson Avenue. UC-1 handed RIVERA $2,200 in cash, and RIVERA told UC-1, in sum and substance, to wait at that location. RIVERA then crossed the street and entered a barbershop located on West 184th Street, before returning

to UC-1 shortly thereafter. RIVERA then went back again to the barbershop, before returning to UC-1 carrying a black plastic bag. UC-1 and RIVERA then entered the apartment building located at 2390 Davidson Avenue and proceeded to a stairwell between the third and fourth floors of the building. At that location, RIVERA opened the bag, which contained approximately 400 small glassine bags containing a tan powdery substance that, based on UC-1's training and experience, UC-1 believed to be heroin. UC-1 and RIVERA then counted the glassines together, and RIVERA handed the bag of glassines to UC-1.

        ii. I have reviewed a lab report of testing performed on the contents of the glassines that UC-1 purchased from RIVERA on or about October 29, 2019. The contents tested positive for heroin and weighed approximately 10 grams in total.

        iii. On or about November 5, 2019, UC-1 received a phone call from RIVERA. During the course of that phone call, UC-1 informed RIVERA, in substance and in part, that UC-1 wanted to purchase 100 grams of heroin. RIVERA responded, in substance and in part, that he could get UC-1 heroin that RIVERA had previously sold to someone who ended up in the hospital. Based on my training and experience, I believe that RIVERA'S statement about a prior customer ending up in the hospital was an assertion that this batch of heroin was dangerously, but desirably, potent. RIVERA and UC-1 agreed to meet in person on or about November 7, 2019. Later that day, UC-1 and RIVERA spoke again via a phone call over the WhatsApp mobile communication app. During this second call, RIVERA stated, in substance and in part, that he had spoken to his friend and that he was good to meet on November 7.

        iv. On or about November 7, 2019, UC-1 purchased approximately 100 grams of heroin and fentanyl from RIVERA. The transaction was video-recorded by law enforcement. After arranging for the transaction with RIVERA by telephone, UC-1 met RIVERA at Location-1. RIVERA and UC-1 entered the building located at 30 West 190th Street and proceeded to the third floor hallway. In substance and in part, RIVERA then asked UC-1 for the money, and UC-1 gave RIVERA $7,500 in cash. RIVERA then instructed UC-1 to wait, and RIVERA walked away before returning moments later carrying a clear zip-lock bag wrapped in clear plastic, which contained a white, rocklike substance. UC-1 then weighed the zip-lock bag on a scale in front of RIVERA and then departed with the zip-lock bag.

        v. I have reviewed a lab report of testing performed on the contents of the zip-lock bag that UC-1 purchased

from RIVERA on or about November 7, 2019. The contents tested positive for heroin and fentanyl and weighed approximately 100 grams in total.

6. Based on my participation in this investigation, including my review of law enforcement reports, other documents, and video recordings, and my conversations with other law enforcement officers, I have learned, in substance and in part, that including the two instances described above, UC-1 purchased heroin and fentanyl from EDUARDO RIVERA, a/k/a "Monster," the defendant, at or near Location-1 on six separate occasions between on or about October 22, 2019 up to and including on or about December 4, 2019. Each transaction was video-recorded by law enforcement. On each occasion, the substances purchased by UC-1 from RIVERA tested positive for the presence of heroin, and some of the substances also tested positive for the presence of fentanyl. The total weight of the heroin purchased from RIVERA is at least approximately 641 grams, of which at least approximately 580 grams also tested positive for the presence of fentanyl.

7. Law enforcement officers have compared the individual shown in the various video recordings of the transactions described above to a known photograph of EDUARDO RIVERA, a/k/a "Monster," the defendant, and concluded that the individual known to UC-1 as "Monster" from whom UC-1 purchased heroin and fentanyl on the above-described occasions is RIVERA.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of EDUARDO RIVERA, a/k/a "Monster," the defendant, and that he be imprisoned or bailed, as the case may be.

---

PABLO E. HUERTA
Special Agent
Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this
12th day of December, 2019

---

THE HONORABLE SARAH L. CAVE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK